UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA '08 MJ 2481   FILED

2008 AUG 11  AM 10: 3

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | Magistrate Case No. |
| Plaintiff, | ) ) ) | COMPLAINT FOR VIOLATION OF |
| v. | ) ) | Title 8 U.S.C., Sec. 1324 (a)(1)(A)(iii) Harboring and Concealing(Felony) |
| 1.) Jose Ramon HERRERA-Contrera 2.) Jose Felipe PEREZ, 3.) Wilmer Giovany OLMEDO | ) ) ) ) | Title 8 U.S.C., Sec. 1324 (a)(1)(A)(ii) Transportation of Illegal Aliens |
| Defendant(s) | ) ) ) ) ) | |

The undersigned complainant, being duly sworn, states:

### COUNT ONE

On or about **August 9, 2008** within the Southern District of California, defendant **Jose Felipe PEREZ and Jose Ramon HERRERA-Contrera** knowing and in reckless disregard of the fact that certain alien, namely, **Benito MARTINEZ-Hernandez,** had come to, entered and remained in the United States in violation of law, did conceal, harbor and shield from detection said aliens, and attempt to conceal, harbor and shield from detection said aliens, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(iii).

### COUNT TWO

On or about **August 9, 2008,** within the Southern District of California, defendant **Wilmer Giovany OLMEDO** with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, **Benito MARTINEZ-Hernandez** had come to, entered and remained in the United States in violation of law, did transport and move, said aliens within the United States in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

SIGNATURE OF COMPLAINANT
Terri L. Dimolios
Senior Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS **11th** DAY OF **AUGUST, 2008**

Anthony J. Battaglia
UNITED STATES MAGISTRATE JUDGE

CONTINUATION OF COMPLAINT:
1.) Jose Ramon HERRERA-Contrera
2.) Jose Felipe PEREZ
3.) Wilmer Giovany OLMEDO

## PROBABLE CAUSE STATEMENT

I declare under the penalty of perjury that the following statement is true and correct:

Furthermore, the complainant states that **Benito MARTINEZ-Hernandez is** a citizen of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material, that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144G.

On August 9, 2008, at approximately 5:00 a.m., United States Border Patrol Agents R. Del Villar, O. Alvarez, F. Padilla, D. Villarreal, D. Vargas, D. Turner, R. Bean, J. Gonzalez, A. Ortega, C. Mackes, and J. Spielman were assigned to the Imperial Beach Station, began a surveillance operation for the property in Modesto Street, San Diego, California.

Agents observed the property from concealed locations until 6:00 a.m. At 6:00 a.m., agents approached the residence in marked Border Patrol vehicles and unmarked Agency vehicles to execute a search warrant for the residence. Upon nearing the residence, Supervisory Border Patrol Agent O. Alvarez noticed that somebody from within the residence lowered the blinds to the window located on the east side of the building and turned off the lights inside. Agents Donibar Vargas, D. Turner and Alvarez noticed that the front door was ajar and proceeded to establish contact with the residents by announcing themselves as Federal Agents in possession of a search warrant before entering the premises, when they heard commotion in the rear patio and observed a subject, later identified as defendant#2 **Jose Felipe PEREZ**, jumping over the backyard fence.

Agents A. Ortega, C. Mackes, J. Spielman and F. Padilla were in the east face of the residence providing perimeter support when they noticed PEREZ and another subject, later identified as defendant #3 **Wilmer Giovany OLMEDO**, exiting the Modesto Street residence and jumping over the wood fence, heading towards the canyon. Agents Ortega, Mackes and Padilla identified themselves as Border Patrol Agents and commanded OLMEDO and PEREZ to stop. OLMEDO and PEREZ did not comply with the agents verbal commands and proceeded towards the canyon. After a short foot chase Agent Mackes detained PEREZ and Agents Padilla and Ortega detained OLMEDO.

Agent Mackes questioned PEREZ as to his citizenship and nationality. PEREZ stated that he was a citizen of the United States. Agents Padilla and Ortega questioned OLMEDO as to his citizenship and OLMEDO stated that he too was a United States citizen. Given that PEREZ and OLMEDO were observed leaving the target residence, they were detained.

Agents Turner, Alvarez, and Vargas, after announcing themselves as Federal Agents and not receiving a response, entered the residence. Agents noticed that the kitchen and the living room were connected. There were no visible occupants in those areas. A search of the adjoining bedrooms revealed other people. Agent Vargas entered the northeastern bedroom and encountered one individual later identified as Benito MARTINEZ-Hernandez. Agent Vargas noticed that the room where MARTINEZ was in was empty of furnishings. Agent Vargas observed that the blinds were shut and there was no clothing or personal items in the closet. Agent Vargas also noticed that the bedroom emanated a putrid smell. Agent Vargas also noticed that MARTINEZ' appeared disheveled. MARTINEZ' clothing was covered in dirt and grime.

**CONTINUATION OF COMPLAINT:**
1.) Jose Ramon HERRERA-Contrera
2.) Jose Felipe PEREZ
3.) Wilmer Giovany OLMEDO

Agent Vargas identified himself as a Border Patrol Agent and questioned MARTINEZ as to his citizenship and nationality in the Spanish Language. MARTINEZ freely admitted to Agent Vargas that he was a citizen of Mexico without any legal documents that would allow him to be in or remain in the United States legally. Agent Del Villar determined through a field interview that MARTINEZ was being held in the load house pending payment for his smuggling arrangements.

Agent Turner attempted to search the southeastern most bedroom but the door was locked. Agent Turner believed that there were other occupants in the room. For officer safety, and complete the execution of the warrant, Agent Turner kicked the door open. Agent Turner encountered two individuals, later identified as defendant #1 **Jose Ramon HERRERA-Contrera** and Magdalena QUINTERO-Diaz.

Agent Turner noticed that the bedroom had two mattresses without a bed frame. Agent Turner noticed that the room was in disarray. Agent Turner observed that the room was infested with cockroaches and ants. There were remnants of spoiled and rotten food throughout the bedroom attracting the bugs.

Agent Turner identified himself as a Border Patrol Agent and questioned HERRERA and QUINTERO as to their citizenship and nationality. HERRERA freely admitted to being a citizen and national of Mexico without any immigration documents allowing him to be in or remain in the United States legally. QUINTERO admitted to having a Border Crossing Card (BCC), however, not on her person. Agent Turner, with the assistance of Agent Vargas, placed HERRERA and QUINTERO in detention.

At the same time, Agents Dimas Villarreal and Del Villar responded to stairwell located on the south side of the residence. Agents Villarreal and Del Villar observed a female later identified as Paulina AGUIRRE, surreptitiously exit the residence from the southern door. Agent Villarreal identified himself as a Border Patrol Agent and question AGUIRRE as to her citizenship and nationality. AGUIRRE stated that she was a citizen of the United States. Agent Villarreal asked AGUIRRE how old she was and AGUIRRE replied that she was sixteen years old. AGUIRRE was detained and escorted to the living room.

After securing all the subjects in the residence agents proceeded to gather evidence. Agents noticed that the entire residence was squalor. Inside of the house, the rooms were covered in filth, the sparse furniture was dirty and damaged, and there was an infestation of cockroaches throughout the house. The kitchen shelves were empty except for a set of license plates and some assorted junk in the drawers. The residence was unsanitary and not adequate for human habitation. In the agents' perspective and experience, this is consistent with the appearance and arrangement of other load houses that have been identified in the past.

Agent Del Villar discovered that MARTINEZ was the only illegal alien being held in the load house pending payment for his smuggling arrangements, and that the other individuals were involved in some way with the load house. At this time, all of the individuals were placed under arrest.

At approximately 7:00 a.m., all six subjects were transported to the Imperial Beach Border Patrol Station for further investigation into the crime of alien smuggling.

CONTINUATION OF COMPLAINT:
1.) Jose Ramon HERRERA-Contrera
2.) Jose Felipe PEREZ
3.) Wilmer Giovany OLMEDO

**DEFENDANT STATEMENT: Jose Ramon HERRERA-Contrera**

HERRERA stated his true and complete name is **Jose Ramon HERRERA-Contrera** and that he is a citizen of Mexico without legal documentation to enter or remain in the United States. HERRERA stated he entered the United States five or six months ago through a place known as "Jardines" in the Tecate, Mexico area, and that he was not inspected by any United States Immigration officer. HERRERA stated he knew that he was entering illegally into the United States at that time. HERRERA claims that he has been living in Santa Ana, California since his illegal entry, but comes to San Diego, California when he is put in charge of caretaking the load house.

HERRERA was presented with a photo lineup consisting of six different photos. HERRERA identified photo number # 1, defendant Wilmer Giovany OLMEDO, as the individual he knows as "Will" and who he met two days ago at a party. HERRERA stated that OLMEDO told him that he is trafficking illegal aliens and his job is to pick up groups and transport them to load houses. HERRERA believed this to be true because he found out that OLMEDO was involved in the smuggling event where a water truck, with 49 Undocumented Aliens inside the tank of the water truck, was intercepted by the U.S. Border Patrol on July 25, 2008.

HERRERA identified photo number # 2, defendant Jose Felipe PEREZ, as an individual that has been involved in alien smuggling for a long time. HERRERA stated that PEREZ arrived at the house for a possible pick up. HERRERA further stated that two days ago there were seven illegal aliens in the house. HERRERA stated that six of the seven illegal aliens were transported to Los Angeles, California, and he believed that PEREZ was coming back from delivering the load to Los Angeles. HERRERA also stated that when PEREZ is not the load driver, then he is assigned to be the "spotter" or "lookout" vehicle.

HERRERA identified photo number # 5, material witness Benito MARTINEZ-Hernandez, as the individual he was assigned to keep in the house.

HERRERA stated that his boss is known as "El Teco" or "El Tecolote", who would come to the house to make telephone calls and collect money. HERRERA stated that he has been taking care of load houses for a long time. "El Tecolote" generally paid him $300.00 USD, but in this event he didn't know how much money he was going to get paid. HERRERA stated that he was going to demand his share of money because he needed it to pay for food, and gasoline to go back to his house in Santa Ana, California.

HERRERA stated that the load house he was taking care of, located at 2441-bottom floor Modesto Street, has been operating for the last two months, and that when they bring groups of illegal aliens who are going to Los Angeles, California, "El Tecolote" immediately arranges their transportation to move up north.

**DEFENDANT STATEMENT: Jose Felipe PEREZ**

Defendant **Jose Felipe PEREZ** stated that he is a citizen of the United States. PEREZ was presented with a photo lineup consisting of six different photos. PEREZ identified photo number 1, OLMEDO, Wilmer Giovany, as a load driver known as "Will".

CONTINUATION OF COMPLAINT:
1.) Jose Ramon HERRERA-Contrera
2.) Jose Felipe PEREZ
3.) Wilmer Giovany OLMEDO

PEREZ identified photo number 6, Jose Ramon HERRERA-Contrera, as the caretaker of the house.

PEREZ stated that he started to transport undocumented aliens when he was a teenager (minor). He stated that he has been successful several times before.

During a photographic line-up, PEREZ was able to identify Benito MARTINEZ-Hernandez, as an undocumented alien waiting to be transported north. PEREZ stated that when spotted the Border Patrol he shouted to the rest of people in the house, "They are already upon us."

## DEFENDANT STATEMENT: Wilmer Giovany OLMEDO

Defendant **Wilmer Giovany OLMEDO** stated that he was born in Los Angeles and that he is a United States citizen. OLMEDO stated that he has been arrested by the Border Patrol ten to eleven times. OLMEDO stated that he was arrested for smuggling marijuana across the border approximately four years ago, for which he served four months in prison.

OLMEDO was presented with a photo lineup consisting of six different photos. OLMEDO identified photo number 2 as defendant Jose Felipe PEREZ, a friend and load driver.

OLMEDO identified photo number 6, defendant Jose Ramon HERRERA-Contrera, as the caretaker of the house, an individual who is always in the house. OLMEDO stated that HERRERA takes care of administrative duties in the house, coordinating affairs and making calls to the load drivers.

OLMEDO stated that he has seen six to seven undocumented aliens being housed in the house at any given time. OLMEDO ran out of the house as the Border Patrol began to serve the warrant on the house. OLMEDO stated that Jose Felipe PEREZ, woke him up from being asleep and said, "Ya nos cayeron!" ("They are already upon us!"). When asked why he ran out of the house, OLMEDO stated that they were expecting the Border Patrol to hit them at any time.

During the interview, OLMEDO provided information in relation to his involvement in an smuggling event that occurred on July 25, 2008, a water truck loaded up with 49 undocumented aliens and attempted to further their illegal entry into the United States undetected.

OLMEDO stated that on the morning of July 25, 2008, he was at an apartment with an individual known as "Cholo Nalgon." OLMEDO stated that "Cholo Nalgon" left the apartment for a moment and then called OLMEDO asking him to pick him up at Dairymart Road. OLMEDO stated that on that morning he borrowed a Black Chevrolet Tahoe from an individual known as "Chago." OLMEDO stated that the water truck belongs to an individual known as "Migue," the head of a known smuggling organization. OLMEDO stated that he was going to be paid money to provide support to the water truck on that day. OLMEDO stated that he knew the driver of the water truck, and that it was "Cholo Nalgon." OLMEDO stated that "Cholo Nalgon" was giving him instructions via radio from the water truck while he was driving it with the undocumented aliens inside. OLMEDO stated that he was in the area of the water truck on that day driving the Black Chevrolet Tahoe. This vehicle was observed interfering with the Border Patrol's attempt to stop the water truck by placing himself between the marked Border Patrol vehicle and the water truck.

**CONTINUATION OF COMPLAINT:**
1.) Jose Ramon HERRERA-Contrera
2.) Jose Felipe PEREZ
3.) Wilmer Giovany OLMEDO

On August 10, 2008, at about 0938 am, Agent Del Villar conducted a second videotaped interview with OLMEDO in the Spanish language as witnessed by Border Patrol Agent Noe Lopez. Agent Del Villar asked OLMEDO if he remembered his rights as they were read to him yesterday and if he was willing to continue answer questions without an attorney present. OLMEDO stated that he remembered his rights and he was willing to continue answer questions without an attorney present.

During the second interview, OLMEDO confirmed all the information that he provided the day before. Furthermore, OLMEDO provided more information as to his involvement in a smuggling incident involving a water truck that occurred on July 25, 2008.

OLMEDO stated that an individual known as "Cholo Nalgon" had successfully used the water truck in two previous occasion. In each occasion, the water truck was used as a conveyance to further the illegal entry of several undocumented aliens. In each occasion, "Cholo Nalgon" was the driver since he was the only one who knew how to drive the truck from their crew. OLMEDO stated that he found out until the second time the truck was used since "Cholo Nalgon" was bragging about it.

OLMEDO stated that in that particular morning, (July 25, 2008), "Cholo Nalgon" told him he was going to do a "Jale." OLMEDO stated that he knew "Cholo Nalgon" was going to drive the water truck to go pick up undocumented aliens. OLMEDO stated that "Cholo Nalgon" told him to wait for him in Dairymart Road since "Cholo Nalgon" felt that the Border Patrol was onto him. OLMEDO stated that "Cholo Nalgon" needed the black Tahoe as a get-away car. OLMEDO was instructed by "Cholo Nalgon" to stay with him on the road just in case he needed to escape.

OLMEDO stated that he was talking to a girl in the "Las Americas" Factory Outlet in San Ysidro when "Cholo Nalgon" called him in his radio and told him he had loaded up and was being chased by the Border Patrol. OLMEDO stated that he drove fast in the freeway to catch up with the water truck. OLMEDO stated that he interfered with the Border Patrol vehicle by accident because he was nervous. He then drove next to the water truck. At this time, "Cholo Nalgon" lowered his driver side window and waived at him. "Cholo Nalgon" told him to wait for him in L Street in Chula Vista. OLMEDO stated that his job was to rescue "Cholo Nalgon" after he bailed out from the water truck. OLMEDO stated that he then drove to "L" Street and waited near a bridge. OLMEDO stated that he saw how "Cholo Nalgon" was taken in custody by the Border Patrol. He waited for a few minutes and then left. OLMEDO stated that after this, he then notified "Dayme," the girlfriend of "Cholo Nalgon."

**MATERIAL WITNESS STATEMENT: Benito MARTINEZ-Hernandez**

MARTINEZ admitted to being a citizen of Mexico without legal documentation to enter or remain in the United States. MARTINEZ stated that he last entered the United States one week ago on Saturday, August 2, 2008, through the mountains near Tecate, Mexico. He claims that his friend from Michoacan, Mexico knew the way and he followed his friend for three or four days until they arrived to a road. About three hours after walking on the road they were picked up in a white pick-up truck and then they were taken to the house located at 2241 Modesto Street - ground floor.

**CONTINUATION OF COMPLAINT:**
1.) Jose Ramon HERRERA-Contrera
2.) Jose Felipe PEREZ
3.) Wilmer Giovany OLMEDO

MARTINEZ identified photo number # 2, defendant **Jose Felipe PEREZ**, as the person who was charging him $1,500.00 USD. MARTINEZ stated that PEREZ was demanding the money.

MARTINEZ identified photo number # 6, defendant **Jose Ramon HERRERA-Contrera**, as the person who was at the house when he arrived. HERRERA gave him instructions on which room he was going to be sleeping. MARTINEZ stated that HERRERA knew that he was in the country illegally because the following morning, HERRERA started demanding the money for the smuggling fee. MARTINEZ stated that HERRERA made him place a few telephone calls to find someone who was willing to pay the $1,500.00 USD smuggling fee.

Executed on August 10, 2008, at 6:00 p.m.

_____
Sergio Narváez
Senior Patrol Agent

On the basis of the facts presented in the probable cause statement consisting of 7 page(s), I find probable cause to believe that the defendant named in this probable cause statement committed the offense on August 9, 2008, in violation of Title 8, United States Code, Section 1324.

_____       8/10/208 at 6:27 p.m.
Ruben B. Brooks                                         Date/Time
United States Magistrate Judge

7